**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| CHRISTINE ODOM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. 5:23-cv-00264-CAR |
| v. | ) | |
| | ) | |
| WILLIAMS COMMUNICATIONS, INC. | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT WILLIAMS COMMUNICATIONS, INC.'S ANSWER TO PLAINTIFF'S**
**AMENDED COMPLAINT AND COUNTERCLAIM**

Defendant Williams Communications, Inc. ("WCI"), by and through undersigned counsel, hereby files its Answer and Affirmative Defenses to Plaintiff's Amended Complaint, and in support thereof, states as follows:

1.      WCI is without sufficient knowledge to admit or deny the allegations in paragraph 1 of the Amended Complaint ("Complaint").  To the extent a response is necessary, WCI denies the allegations in paragraph 1 of the Complaint.

2.      WCI admits the allegations in paragraph 2 of the Complaint.

3.      WCI admits that Plaintiff filed the initial Complaint on December 21, 2021 and that Plaintiff subsequently served WCI with the initial Complaint.  WCI denies the remaining allegations not specifically admitted in paragraph 3 of the Complaint.

4.      WCI admits that Plaintiff entered into an employment agreement with WCI to perform work in Georgia. That agreement speaks for itself.  WCI denies the remaining allegations not specifically admitted in paragraph 4 of the Complaint.

5.      WCI admits that it transacts business in Bibb County, Florida.  WCI denies the remaining allegations not specifically admitted in paragraph 5 of the Complaint.

6.      For jurisdictional purposes only, WCI admits the allegations in paragraph 6 of the Complaint.

7.      WCI admits the allegations in paragraph 7 of the Complaint.

8.      For venue purposes only, WCI admits the allegations in paragraph 8 of the Complaint.

9.      WCI is without sufficient knowledge to admit or deny the allegations in paragraph 9 of the Complaint because it is unsure what Plaintiff means by "[p]rocess and service are valid in all respects."  WCI denies the remaining allegations not specifically admitted in paragraph 9 of the Complaint.

10.     WCI denies the allegations in paragraph 10 of the Complaint.

11.     WCI denies the allegations in paragraph 11 of the Complaint.

## THE EMPLOYMENT ARRANGEMENT

12.     WCI admits the allegations in paragraph 12 of the Complaint.

13.     WCI admits the allegations in paragraph 13 of the Complaint.

14.     WCI denies the allegations in paragraph 14 of the Complaint.

15.     WCI __ the allegations in paragraph 15 of the Complaint.

16.     WCI denies the allegations in paragraph 16 of the Complaint.

17.     WCI admits that it advanced a partial commission payment to Plaintiff in June 2021 because Plaintiff was not able to fully reconcile all costs associated with corresponding customer payments. WCI did this so Plaintiff's full commission was not delayed while the reconciliation

took place. WCI denies the remaining allegations not specifically admitted in paragraph 17 of the Complaint.

18.     WCI admits that it received a letter dated July 30, 2021 from an attorney apparently retained by Plaintiff. That letter speaks for itself. WCI denies the remaining allegations not specifically admitted in paragraph 18 of the Complaint.

19.     WCI admits that it normally paid Plaintiff commission twice a year, once at mid-year and once at year-end after all costs on a project were account for and reconciled against payments received from the customer. WCI further admits that, in good faith and to accommodate requests by Plaintiff, it advanced some commission payments to Plaintiff. WCI denies the remaining allegations not specifically admitted in paragraph 19 of the Complaint.

20.     WCI denies the allegations in paragraph 20 of the Complaint.

21.     WCI admits that Plaintiff presented it with an inaccurate spreadsheet. WCI denies the remaining allegations not specifically admitted in paragraph 21 of the Complaint.

22.     WCI denies the allegations in paragraph 22 of the Complaint.

23.     WCI denies the allegations in paragraph 23 of the Complaint.

24.     WCI admits it terminated Plaintiff but denies that the termination had any connection to the attorney's letter. WCI denies the remaining allegations not specifically admitted in paragraph 24 of the Complaint.

## COUNT ONE: BREACH OF CONTRACT

25.     WCI admits the allegations in paragraph 25 of the Complaint.

26.     WCI denies the allegations in paragraph 26 of the Complaint.

27.     WCI denies the allegations in paragraph 27 of the Complaint.

28.     WCI denies the allegations in paragraph 28 of the Complaint.

29.     WCI denies the allegations in paragraph 29 of the Complaint.

## COUNT TWO: SEX DISCRIMINATION

30.     WCI admits that Plaintiff is a female. WCI denies the remaining allegations not specifically admitted in paragraph 30 of the Complaint.

31.     The allegations in paragraph 31 call for a legal conclusion to which no response is necessary. To the extent a response is necessary, WCI denies the allegations in paragraph 31 of the Complaint.

32.     WCI denies the allegations in paragraph 32 of the Complaint.

33.     WCI admits that it terminated Plaintiff pursuant to a letter from its attorney. That letter speaks for itself.   WCI denies the remaining allegations not specifically admitted in paragraph 33 of the Complaint.

34.     WCI denies the allegations in paragraph 34 of the Complaint.

35.     WCI denies the allegations in paragraph 35 of the Complaint.

36.     WCI denies the allegations in paragraph 36 of the Complaint.

37.     WCI denies the allegations in paragraph 37 of the Complaint.

38.     WCI denies the allegations in paragraph 38 of the Complaint.

39.     WCI denies the allegations in paragraph 39 of the Complaint.

40.     WCI denies the allegations in paragraph 40 of the Complaint.

41.     WCI denies the allegations in paragraph 41 of the Complaint.

42.     WCI admits the allegations in paragraph 42 of the Complaint.

43.     WCI admits the allegations in paragraph 43 of the Complaint.

44.     WCI denies the allegations in paragraph 44 of the Complaint.

## COUNT THREE: ATTORNEYS' FEES

45.    WCI denies the allegations in paragraph 45 of the Complaint.

46.    WCI denies the allegations in paragraph 46 of the Complaint.

47.    WCI denies the allegations in paragraph 47 of the Complaint.

WCI denies that Plaintiff is entitled to any of the relief sought in the WHEREFORE clause.

## AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE

Plaintiff fails to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

All monies due to be paid to Plaintiff by WCI have already been paid, including all 2020 and 2021 commissions, inclusive of check no. 205123, in the gross amount of $40,984.09, which WCI agreed to pay Plaintiff, well prior to Plaintiff's filing of this lawsuit, and upon completion of project costs reconciliation.

## THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred to the extent she seeks commissions for sales not completed at the time of her termination of employment with WCI.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims against WCI are barred, in whole or part, by the doctrines of waiver and/or estoppel. Plaintiff previously requested advancement of commission payments and accepted the same against future commission earnings. She is now estopped from excluding such advancements from Plaintiff's alleged unpaid commissions. Plaintiff accepted commission payments in satisfaction of commission amounts demanded, and, having not returned said payments as improper, has waived any claim for unpaid commissions.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred or subject to reduction or setoff by application of damages caused to WCI by Plaintiff's failure to meet her employment obligations and duties owed to WCI as her employer, including, without limitation, losses due to Plaintiff's failure (intentionally or negligently) to accurately quote prices to customers resulting in financial loss to WCI and liquidated damages resulting from Plaintiff's failure to comply with her Confidentiality and Non-Compete Agreement.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred due to Plaintiff's first breach of her duties to WCI as her employer, including, without limitation, Plaintiff's failure to accurately and timely communicate with WCI's customers, thereby causing financial loss to WCI.

## SEVENTH AFFIRMATIVE DEFENSE

To the extent Plaintiff has failed to take reasonable steps to obtain subsequent employment, and/or failed to accept an equivalent position of employment, Plaintiff has failed to mitigate her damages. Therefore, her recovery, if any, should be reduced or barred by such failure to mitigate her damages in the amount Plaintiff actually earned, or could have earned, from employment of a similar nature had she acted with reasonable due diligence.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's claim for economic damages is, or should be, limited based on any after acquired evidence discovered in this case.

## NINTH AFFIRMATIVE DEFENSE

To the extent that Plaintiff made allegations in the Complaint or attempts to assert claims that relate to alleged acts of alleged discrimination not encompassed within a charge filed with and

investigated by the Equal Employment Opportunity Commission ("EEOC") or any appropriate state or local agency, those claims and/or events are not properly before the court, jurisdictionally or otherwise.

## TENTH AFFIRMATIVE DEFENSE

WCI's decisions made as to Plaintiff's employment were without consideration as to any protected category, but if it is determined that any protected category was a motivating factor in any decision, then WCI asserts that it would have reached the same result, regardless of any protected category of Plaintiff, based upon the facts and circumstances of the case.

## ELEVENTH AFFIRMATIVE DEFENSE

WCI made good faith efforts to comply with the law and should not be liable for any discriminatory acts by its employees, whether managerial or not.

## TWELFTH AFFIRMATIVE DEFENSE

WCI believed in good faith that its conduct was in compliance with state and federal law.

## THIRTEENTH AFFIRMATIVE DEFENSE

WCI took all reasonable steps to make certain all of its actions were in compliance with state and federal law.

## FOURTEENTH AFFIRMATIVE DEFENSE

All actions taken by WCI were based on legitimate non-discriminatory reasons, which were not pretextual.

## FIFTEENTH AFFIRMATIVE DEFENSE

Any violation of Title VII was not willful or intentional. WCI had policies and procedures of compliance with the law, and made all decisions based on legitimate business reasons.

## SIXTEENTH AFFIRMATIVE DEFENSE

WCI asserts that Plaintiff was an at-will employee and, therefore, Plaintiff was subject to termination at any time, with or without cause, so long as said action was not for an unlawful reason.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims may exceed the amounts permissible, and all such claims are subject to the limitations of appropriate statutory caps or limits existing at law.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Plaintiff's damages, if any, have been paid in whole or in part by collateral sources, which eliminate or reduce any potential damages recovered from WCI.

## NINETEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred to the extent she has failed to exhaust all of the administrative remedies and/or has failed to satisfy all of the conditions precedent to bringing this action.

## TWENTIETH AFFIRMATIVE DEFENSE

If any allegations of unlawful conduct are true, WCI's employees acted on their own, in violation of WCI's strict policies prohibiting such conduct, and acted outside the scope of their employment.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

The damages sustained by Plaintiff, if any, were proximately caused and occasioned by the acts and omissions of Plaintiff and/or others, said acts and omissions being the sole cause of Plaintiff's alleged damages. Therefore, WCI pleads the intervening acts and omissions of Plaintiff and/or others as a complete bar to Plaintiff's claims against WCI.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims are barred to the extent conditions precedent that have not yet occurred, namely the receipt of final customer payments, reconciled against final costs incurred, to determine commissions due, if any.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part to the extent the allegations fall outside the applicable statute of limitations.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

WCI is entitled to recover its costs of court and attorney's fees for the defense of Plaintiff's action because this action is frivolous and without foundation in law or fact.

WCI reserves its right to amend this Answer and assert additional Affirmative Defenses as Plaintiff's claims are more fully disclosed in the course of discovery in this litigation.

## COUNTERCLAIM FOR BREACH OF CONTRACT

Defendant/Counter-Plaintiff, Williams Communications, Inc. ("WCI"), by and through the undersigned counsel, hereby sues Plaintiff/Counter-Defendant, Christine Odom ("Odom"), and alleges as follows:

1.      This is an action for injunctive relief to enforce restrictive covenants contained in Confidentiality and Non-Compete Agreement between WCI and its former employee, Odom, as well as damages due and owing from Odom to WCI based on the terms of such Agreement.

2.      WCI is a 63-year old, third-generation family owned company, delivering and servicing the land mobile radio communications systems needs of numerous critical response organizations, such as first responders and utilities.

3.    WCI is a long-time reseller and authorized service provider for various leading wireless radio communications equipment manufacturers and suppliers

4.    WCI has established an excellent reputation and substantial goodwill with its clients in multiple states, including the State of Georgia.

5.    WCI has expended a significant amount of resources to establish and grow a loyal customer base and trusted reseller relationship with proprietary technology manufacturer and suppliers, in this competitive industry.

6.    WCI has a vested interest in retaining its customers and suppliers from year to year.

7.    The growth and success of WCI is highly dependent on the substantial relationships WCI has with its existing and prospective customers and suppliers, the goodwill associated with its business activities, and the valuable confidential business information and trade secrets, which have been developed by, and belong to, WCI. These substantial relationships, goodwill, and confidential business information and trade secrets constitute WCI's legitimate business interests.

8.    WCI legitimate business interests are not shared or readily acquired by competitors of WCI and represent a substantial investment of time, money and effort by WCI over a long period.

9.    In order to protect these substantial relationships, goodwill, proprietary and confidential information, WCI requires various employees to sign agreements containing confidentiality, non-competition and non-solicitation provisions.

10.    Odom worked for WCI in sales for approximately nine (9) years and most recently was a Regional Sales Manager for WCI.

11.    As a sales representative, Odom was responsible for maintaining relationships with customers of WCI, and coordinating with WCI's suppliers to support customers. Odom also became intimately familiar with the confidential and proprietary pricing information used by WCI, among other confidential information. Odom also obtained significant and detailed knowledge of WCI's customers and suppliers.

12.    Odom executed a Confidentiality and Non-Compete Agreement as part of her employment with WCI. A true and correct copy of this agreement is attached hereto as Exhibit 1 (the "Agreement").

13.    Per paragraph 3 of the Agreement Odom agreed that "all books, papers, records, lists, files, forms, reports, accounts, documents "whether prepared by Odom or anyone else, and whether or not containing a trade secret or confidential information, are the exclusive property of WCI and that she would immediately return the same to WCI upon Odom's termination of employment or earlier at WCI's request.

14.    Paragraph 5 of the Agreement contains a non-solicitation clause (the "Non-Solicitation Provision"), pursuant to which Odom promised, during the term of her employment and for two years thereafter, that she would not directly or indirectly "solicit, engage, hire call on, compete for, sell to, divert, or take away any customer, supplier,...."

15.    The terms of the Agreement, which are still in effect, are reasonable and necessary to protect WCI's legitimate business interest.

16.    The Agreement is supported by adequate consideration in the form of WCI's prior employment of Odom, and other good and valuable consideration.

17.    On September 15, 2021, WCI terminated Odom's employment for performance concerns, as well as concerns that Odom was misusing the Company's confidential and proprietary data.

18.    All conditions precedent to this action have been satisfied or waived.

19.    WCI has suffered and will continue to suffer damage as a result of the unlawful actions of Odom.

## COUNT I: BREACH OF CONTRACT

20.    WCI incorporates by reference the allegations contained in Paragraphs 1 through 19 as if fully set forth herein.

21.    Odom is bound by the provisions of the Agreement.

22.    Odom breached paragraph 3 of the Agreement by misusing WCI's corporate property, including confidential and proprietary data, for which Odom had access and refused to return to WCI, despite numerous requests by WCI, after Odom's employment with WCI terminated.

23.    Odom also breached the Non-Solicitation Provision of her Agreement when she texted a supplier on or about September 15, 2021, stating "Just wanted to let you know that I left Williams today clue to their lack to respond and support customers. If I can ever help, this is my personal cell."

24.    Not only is this statement false since Odom's employment was terminated by WCI, but it is apparent that Odom was attempting to interfere with WCI business relationship with its suppliers. Such intereference is expressly prohibited by Odom's continuing responsibilities set forth in her Confidentiality and Non-Compete Agreement,

which expressly prohibits her from competing for, calling on, soliciting, enticing, diverting or taking away a supplier or the sale of that supplier's goods, products, or services.

25.     Upon information and belief, Odom has made similar communications to other customers and/or suppliers, all in breach of the Non-Solicitation Provision of the Agreement.

26.     On multiple occasions, WCI demanded that Odom return any and all corporate documents, retract her false statements, cease engaging in conduct which is prohibited under the terms of the Agreement, and comply with the restrictive covenants set forth under the Agreement.

27.     To date, Odom has refused to return all of WCI's corporate property and retract her false statement, which was used as an attempt to divert one of WCI's key suppliers from doing business with WCI.

28.     Per Paragraph 7 of each of the Agreement, Odom agreed that in the event of a breach by her, WCI shall be entitled to receive temporary or permanent injunctive relief. (Exhibit 1 at Paragraph 7).

29.     Unless Odom returns WCI's business records and retracts her false statement, WCI's legitimate business interests that support the restrictive covenants set forth in the Agreements will be irreparably damaged.

30.     Per paragraph 8 of the Agreement, Odom agreed that if she violated the Agreement, she would pay WCI $100.00 per day as liquidated damages, for each day, or part thereof, that Odom continues to breach the Agreement.

31.     As of the filing of this Counterclaim, 686 days have elapsed since Odom delivered the unlawful September 15, 2021 text solicitation to one of WCI's key suppliers, as referenced above. For that breach alone, and in the absence of any retraction of the same

by Odom as previously demanded by WCI, the liquidated damages under the Agreement have accrued and will continue accrue.

33.    Additional liquidated damages are clue and owing to WCI, on account of other communications made by Odom in breach of her Agreement with WCI.

33.    Odom has acted in bad faith, been stubbornly litigious, and caused Defendant undue burden and expense.

34.    Odom has caused the violations of the Agreement as alleged above, and has asserted this lawsuit and defended this Counterclaim, all without substantial justification, interposing her defenses only for delay and harassment.

35.    Pursuant to O.C.G.A. s. 9-15-14 and s 13-6-11, WCI is entitled to attorney fees, costs, and expenses associated with this litigation.

WHEREFORE, WCI demands judgment against Odom, enjoining Odom from engaging in conduct or otherwise violating the Agreement, awarding liquidated damages pursuant to the Agreement, awarding WCI its reasonable attorney fees and costs, and granting such other relief as this Court deems just and proper.

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I have filed the foregoing DEFENDANT WILLIAMS COMMUNICATIONS, INC.'S ANSWER TO PLAINTIFF'S AMENDED COMPLAINT AND COUNTERCLAIM with the Clerk of Court using the Cm/ECF System, which will automatically send notification of such filing to the following attorneys of record:

Douglas H. Dean
DEAN THAXTON
601 East 14th Avenue
P.O. Box 5005
Cordele, GA 31010
doug@deanthaxton.law

This 2nd day of August, 2023.

CONSTANGY, BROOKS, SMITH
& PROPHETE, LLP

/s/ Alyssa K. Peters
ALYSSA K. PETERS
Georgia Bar No. 455211

577 Mulberry Street
Suite 710
Macon, GA 31201-8588
(478) 750-8600
(478) 750-8686 (facsimile)
apeters@constangy.com